GRAY v. THE BURLINGTON & M. R. R. Co.

1. **Railroad**: RIGHT OF WAY: CONVEYANCE ON CONDITIONS. Where the owner of real estate conveys to a railroad company a right of way over his premises, with the proviso that the company shall construct adequate crossings over its road, it cannot, after its acceptance of the grant, and the construction of its road, exonerate itself from its obligation to construct the crossings, by a condemnation of the right of way under the provisions of the statute.

2. —— CONSTRUCTION OF CROSSINGS. As to what constitutes an adequate crossing within the meaning of the statute (Rev., § 1329), is a question of fact largely depending on the nature and position of the crossing,. and other circumstances of the case.

3. —— Where a railroad running through premises separates the house of the owner from the highway, a crossing thereto through heavy gates, which are not placed on hinges, but must be slid back and carried around, is not, under the circumstances, an adequate crossing.

4. —— In such case the proprietor is entitled to an open crossing through which he and his family may reach the highway without opening gates.

5. —— Where a conveyance of the right of way stipulates that the grantor is to have two crossings over the railroad, if he requests them, and he accordingly serves notice on the company that he requires such crossings, he will not be denied relief because he undertook to dictate the locality and kind of crossings, or because he asked more than in this respect he was entitled to.

## Appeal from Monroe District Court.

### FRIDAY, SEPTEMBER 19.

ACTION in equity to enforce an alleged agreement of defendant to furnish plaintiff two causeways or other adequate means of crossing defendant's road, constructed through the premises of plaintiff. On the 31st day of October, 1863, plaintiff deeded to defendants, for right of way, so much of the south half of the south-east quarter of section six, township seventy-two north, range sixteen west, as lies within fifteen feet of the center line of the main track of the Burlington & Missouri River railroad at that time surveyed, staked, and marked on the ground. Defendants accepted this deed, and filed the same for record on the 12th day of October, 1865; and they constructed their road over the land so conveyed and have operated the same ever since November, 1866. Plaintiff bases his right to the relief demanded upon the conditions of the right of way deed, which, for the consideration of one dollar, conveys the right of way aforesaid to defendant, "provided the said company make and keep in good repair two causeways or other adequate means of crossing if I should require two."

Plaintiff claims that, under the conditions of this deed he is

entitled to open crossings by means of which he can pass the railway without hitching his team, or opening and closing gates.

Defendant claims that the terms of the deed do not entitle the plaintiff to open crossings, and insists that it is discharged from all liability under the deed, because of certain proceedings for the condemnation of right of way, which occurred after the railway was constructed, in August, 1867.

From a copy of these proceedings it appears that on the 15th of August, 1867, the defendant caused the sheriff of Monroe county to be requested to summon commissioners to assess the damages occasioned by the taking for right of way of so much of the premises of plaintiff as lies within fifty feet of the center line of the track of the Burlington and Missouri River Railway Company, being a strip one hundred feet wide, extending through said tract along the line of said road, and that commissioners properly summoned assessed the damages for said right of way at $120.

The court dismissed plaintiff's petition and he appeals.

*Dashiel, Anderson & Stewart* for the appellant.

*Perry & Townsend* for the appellee.

DAY, J. — I. Defendant urges that by the proceedings for the condemnation of right of way, it is discharged from all obligations under the deed. Without this deed the defendant would have been a trespasser when it entered upon the plaintiff's premises to construct its road. Under this deed the right of entry was acquired and the road was constructed, and had been operated from November, 1866, until August, 1867, before the right of way proceedings were instituted. Under it defendant acquired the right to occupy a strip of ground thirty feet in width through plaintiff's premises. The acceptance of this with its conditions, and the subsequent entering upon and occupancy of the premises conveyed, amounted to an agreement upon the part of defendant to perform the conditions

1. RAILROAD: right of way: conditions.

contained therein. From this implied contract the defendant cannot by its own act, without the assent or concurrence of plaintiff, discharge itself. It is claimed, however, that the plaintiff has so consented by his acceptance of the money assessed by the sheriff's jury for right of way. But his testimony shows that he did not accept the one hundred and twenty dollars as consideration for the strip thirty feet in width described in the deed, but as consideration for the remaining seventy feet in width necessary to make up the one hundred feet demanded by defendant. So that plaintiff is not by this act estopped from insisting upon a performance of the conditions in the deed. Besides the deed, its acceptance and the taking possession of and using the property it described, vested in the defendant the title to the lands in the deed described as fully as it is capable of acquiring title to such property.

It could not, therefore, ignore the deed and the rights thereby acquired, and proceed to an assessment of damages for occupying property which belonged to itself. The only reasonable construction which can be placed upon this assessment is that it applied only to the strip thirty-five feet in width on each side of the land conveyed by plaintiff, and necessary in connection therewith to make up the one hundred feet desired.

This is all that could, under the circumstances, have been properly assessed by the commissioners, and it is all that, as shown by the parol evidence introduced, was in fact assessed.

We feel well satisfied, therefore, that the only effect of the right of way proceedings was to vest in defendant the right to use a wider strip of land through the plaintiff's premises, and that it does not release defendant from any obligation imposed by the acceptance of the deed, and the benefits it conferred.

II. By the acceptance of the deed and the occupancy and use of the premises conveyed, defendant undertook to make and keep in good repair two causeways or other adequate means of crossing the road, if the plaintiff should require two.

Section 1329 of the Revision provides that " when any person owns land on both sides of any railroad, the corporation

owning such railroad shall, when required so to do, make and keep in good repair one causeway or other adequate means of crossing the same."

The language of the deed is the same, except that, in consideration of giving the right of way, plaintiff has the option to require two crossings.    These crossings are to be of the kind recognized in section 1329, that is they are to be *causeways*, which the statute regards as adequate crossings, or other adequate crossings.

A causeway is defined by Webster to be a way raised above the natural level of the ground, by stones, earth, timber fascines, etc.    As applied to a railroad it must mean a way raised above the road.    A way so raised and properly constructed the law recognizes as adequate.    But the law nowhere defines what constitutes the other adequate crossings which the statute authorizes, nor has it been determined, so far as we can discover, by judicial construction.    The case of *Bartlett* v. *Dubuque & Sioux City Railway Company*, 20 Iowa, 188, relied on by defendant, does not furnish this construction.

This case only determines that chapter 169 of the Laws of 1862 does not, as matter of law, require a railroad to construct cattle-guards at farm crossings.    It merely decides that this statute does not declare how farm crossings shall be constructed. In other words, it merely shows that this statute does not define or aid in defining an adequate crossing.    Then as an adequate crossing is to be constructed, and such crossing is not defined as matter of law, it must be determined as a question of fact.

And as railroads cut through farms in every conceivable manner, the adequacy of the crossing must largely depend upon the circumstances of the case.

III. We come now to consider whether defendant has complied with the conditions in the deed.    It is conceded that 2. —— construc- defendant has constructed but one crossing.    It tion of crossings. is clearly in default then if plaintiff properly required two, which question we will hereafter consider.

But is the one crossing provided an adequate one under the circumstances ?

The defendant's railroad enters upon the south half of the south-east quarter of section six, the premises of plaintiff, about the center of the east line, and runs south-west, leaving plaintiff's premises at the south-west corner and cutting off south of the road about 20 acres, lying in a wedge shape. When the road was constructed this portion of the 80 was prairie, unimproved and uninclosed. It is now inclosed and in cultivation. When the deed for right of way was executed the Albia and Eddyville road, being the only highway to which plaintiff has access, was traveled south of plaintiff's dwelling-house and between it and the located line of the railroad, but at that time it was laid out on the south line of plaintiff's premises, and the travel was removed to the laid-out line before the railroad was built. The agent of defendant, at the time of taking the deed for right of way, was advised that said road would probably be removed. The Albia and Eddyville road now runs south of the railroad, and the means that plaintiff has of reaching this highway without crossing over the private property of others, is by going south across the railroad.

At the crossing provided at this place there are two gates, one on each side of the railroad. These gates do not hang upon hinges, but are 15 feet wide, made of fencing boards, four boards high, with two posts and a cross-piece on which the gates slide back without rollers. In passing them they must be pushed back and lifted around. The gates are very heavy and clumsy to open and shut.

The railroad has thus, as the evidence shows, interposed itself between plaintiff and the highway, leaving him egress only through two ill-constructed and heavy gates. Every time that he or any member of his family has occasion to leave the premises, whether upon business or pleasure, the way lies through these barriers which constitute the only means of reaching the county, town, or elections, or school meetings, or church, or of making a family visit to a neighbor.

We have no hesitancy in holding that the means of crossing provided in this case are not, under the circumstances, adequate.

IV. There is less difficulty in reaching the conclusion that the crossing provided in this case is not adequate, than in determining the further question involved in this case, and which it seems necessary to decide, to wit: What kind of crossing do the circumstances require?

The policy of every well-regulated government is to furnish its citizens free and uninterrupted access to the public highways, in order that they may discharge the various duties of citizenship with all practicable ease and pleasure.

And whilst it is not practicable to have a highway at every man's door, yet no unnecessary or unreasonable obstacle should be interposed between him and the highways. In *Bankhead* v. *Brown*, 25 Iowa, 540 (546), it is said: "Without a road or the means of getting a road to the farm of a citizen, he could not well obey the *venire* that commands him to attend at the court as a juror, could not well pay his taxes, vote, reach the church or send his children to school. Hence the State may properly provide for the establishment of a public road or highway to enable every citizen to discharge his duties. The State is not bound to allow its citizens to be walled in, insulated, imprisoned, but may provide them a way of deliverance."

Whilst this is true it must be admitted that railways are improved highways, greatly facilitating means of locomotion and the transportation of commercial products, and doing much to promote the material interests of the localities in which they exist.

The law must be so construed as to protect the citizen, and guard him against needless burdens and encroachments, and at the same time so as not to oppress or discourage the great works of internal improvement which do so much to ameliorate the human condition, and which make the present as the most wonderful age of progress of which we have any record.

With these considerations in view we are of opinion that where a railway runs between the residence of a citizen, and the only means which he has of reaching a highway, that he has a right to insist that an open crossing shall be provided for

him, by means whereof he may reach the highway without stopping to open gates or remove bars. He has a right to as free and unobstructed egress as the circumstances of the case reasonably admit. And whilst the railroad company has a right to intervene between him and the highway, it has not the right unnecessarily to subject him to inconveniences and burdens which can be guarded against by the exercise of reasonable care, and at a reasonable outlay. The necessities of the citizen often require that he shall be able to reach the highway without any delay. Sometimes his wife and children unattended desire egress, and, under such circumstances, a blockade of the way by gates and bars encroaches unreasonably upon the rights which the government guarantees the citizen, and in which he has a right to demand protection.

V. It is claimed that plaintiff is entitled to no relief in this action because of the notice which he served on defendant requiring the two crossings.

In this notice plaintiff required and demanded that defendant make and keep in repair two open causeways, or other adequate means of crossing said road, one south of his house, at a point where the fences are opened by means of gates erected, and the other for the passage of stock under the railroad bridge on plaintiff's farm. It may be conceded that plaintiff was not entitled to a passage under the defendant's bridge, and that he could not arbitrarily dictate the places of the crossings. Yet that he was entitled to an open crossing we have before seen, and he is also entitled to another adequate crossing, and he is not to be denied all relief simply because he asked more than he was entitled to.

He did signify to the company his desire for two adequate crossings of the railroad, pursuant to the provisions of the deed. The deed provides that he shall have two crossings if he requires them. He notified the company that he did require them, and then it became the duty of defendant to erect them. Plaintiff is not to be deprived of that to which the deed clearly entitles him, simply because he undertook to designate the locality and kind of the crossings. In reaching

the foregoing conclusions we have considered some portions of plaintiff's deposition which the court below, on motion of defendant, suppressed.

This action of the court was based upon the immateriality of the testimony, and seems to have been predicated upon the conclusion that, under the deed, plaintiff was not entitled to an open crossing.

Our conclusion that he is, under the circumstances of this case, so entitled, renders the suppressed evidence material and proper, and hence we have given it its proper weight in our examination of the case.

In our opinion the court erred in dismissing plaintiff's petition.

Reversed.