## Boggs v. The C., B. & Q. R. Co.

1. **Railroads**: DUTY TO CONSTRUCT CROSSINGS: MANDAMUS. The railway track of the defendant crosses the farm of the plaintiff between his house and the highway. Plaintiff constructed a lane from his house to the highway, being open at the end where it meets the highway, and requested the defendant to make an open crossing at the point where such lane intersects its track, which request was refused. In an action for a writ of *mandamus* to compel the construction of such crossing it was held,

   1. That an open crossing is within the contemplation of section 1268 of the Code, and may be required under its provisions when, as in this case, it is the only "adequate means" of crossing which can be afforded a land owner.
   2. That in such case the duty to construct a crossing of that character is imposed by the statute, and its performance may be compelled by *mandamus*.
   3. That the point designated by the land-owner is, *prima facie*, the most convenient for him, and will be deemed a reasonable place unless rendered unreasonable by difficulty of construction, or some other fact.

*Appeal from Monroe Circuit Court.*

TUESDAY, OCTOBER 5.

THE plaintiff owns one hundred and sixty acres of cultivated lands, situated on both sides of the Chicago, Burlington & Quincy Railroad. On the 11th day of September, 1879, he commenced this action, asking a writ of *mandamus*, commanding the defendant to provide an open crossing across the railroad track. The cause was tried to the court, and relief was granted as prayed. The defendant appeals. The material facts are stated in the opinion.

*Perry & Townsend*, for appellant.

*Coen & Coen*, for appellee.

DAY, J.—The facts of the case are substantially as follows: For thirty years past the plaintiff has owned the west half of

the land in question.    The Burlington and Missouri River

1. RAILROADS: Railroad was constructed over this land in 1866,
duty to con-
struct cross- and it is now operated by the Chicago, Burling-
ings : man-
damus.      ton & Quincy Railroad Company.    The plaintiff
then had a house, barn, stable, crib and some other build-
ings on the north forty of the eighty, about the center north
and south, and twenty rods east of the west line, and north
of the railroad.    In 1870 the Central Railroad of Iowa was
constructed across said land, running between the plaintiff's
house and barn, about seventy-five steps from the barn, and
one hundred and fifty feet north of the house, placing the
house between the two railroad tracks.

The plaintiff's premises were situated in such proximity to
the Central Railroad that they twice came near being destroyed
by fire from it.    About eight or nine years ago, the plain-
tiff purchased the east half of the one hundred and sixty acres
now in controversy.    The Chicago, Burlington & Quincy
Railroad enters this land near the northeast corner, and trav-
erses it in a southwesterly direction, leaving it at the middle
of the west line.    West and a little south of this point is sit-
uated the depot of the defendant.

The town of Albia, which is the county-seat, and plaintiff's
post-office, is situated two miles southwest of plaintiff's present
residence.    The road from Albia crosses the depot grounds
of the defendant, and extends in a northeast direction till it
touches plaintiff's premises, about the middle of the west line
of the northwest forty; it proceeds north along the west line
to the northwest corner, thence east along the entire north
line of plaintiff's premises.    From the middle of the north
line of plaintiff's premises a road runs north.    At this point
is situated the school-house which plaintiff's children attend.
Upon this road are situated the mill patronized by plaintiff,
and the coal mines, from which he procures coal.    About
eight years before this suit was commenced the plaintiff built
his house and two barns near the center of the one hundred
and sixty acres, south of defendant's track.    For seven years

the plaintiff has been going north until he struck the railroad fence, and then along the railroad fence forty-six rods northeast, to the highway. He has now constructed a lane due north from his house, to the highway running east and west along his north line, and the highway extending north from the middle of his north line. This lane is open at the north end but is closed at the railroad. It is at the point where this lane crosses the railroad that the plaintiff asks an open crossing. The accompanying plat and explanation will render more plain the situation of the premises.

| 1. ...........House. | 6......School-house. | M..McCahan's farm. | ===Railroads. |
| 2 and 3........Barns. | B......Boggs' farm. | G... Gurwells' farm. | ——Highway. |
| 4.....Old house site. | C..........Crossing. | X..C., B. & Q. R. l'ds. | ::::::::Fence. |
| 5.......Old barn site. | L............. Lane. | ——40 acre lines. | |

About the time of the trial the defendant filed an amendment to its answer, stating that it stands ready to give the plaintiff a free and unobstructed right of way over its depot grounds to the highway that passes over said grounds, and leads to Albia. During the trial, T. B. Perry, one of the attorneys for the defendant, made the following statement in the form of a proposition. "I am authorized by the C., B. & Q. R. Co. to say that if Mr. Boggs will accept an outlet going west from his house to the west part of his land, where the company's ground at the central crossing joins his, he can have the right of way over the company's grounds to the highway, as long as he wants it."

The route proposed by the defendant would be one-half mile shorter to Albia, and one-half mile longer to the mill, the coal mine and school-house, than the route desired by the plaintiff. The evidence shows that the plaintiff requested the defendant to make an open crossing *at the place indicated*.

I. The defendant in its answer denies the right of the plaintiff to compel the defendant to put in an open crossing at the point where the lane crosses the railroad, amongst others for the following reasons: "Because an open crossing would increase the hazards and dangers of operating the road, which should be avoided in a case like this where the plaintiff is not shut out from town or the highway, and can get a better route out over his own land south of the railroad, than northward over this crossing in the lane.

"Because it is an open lane except as closed by the railroad. It is a point where the public have a right to expect it to be fenced.

"If, to accommodate the plaintiff, the defendant makes this an open crossing, it would be liable for the stock of third persons killed upon it, for the reason that it should be fenced, and the defendant could not justify on the ground that it was left open to accommodate the plaintiff.

"Because the law does not contemplate or provide that a railroad company shall put in an open crossing for a private

person, for the reason that it now provides for only one cattle guard, showing that an open crossing is not meant.

"Defendant denies that this proceeding by *mandamus* is the proper remedy, if any, the plaintiff is entitled to. That the giving an open crossing in this case is not a duty enjoined upon defendant by law, resulting from an office, trust or station."

The plaintiff moved to strike out these portions of the answer, upon the ground that they state only legal conclusions and matter superfluous, redundant and immaterial to the issues. The motion was sustained.

This action of the court is assigned as error. In our opinion these portions of the answer were properly stricken out. They state merely legal conclusions and matters of argument.

II. It is claimed that *mandamus* is not the proper remedy. Section 3373 of the Code provides: "The action of *mandamus* is one brought in a court of competent jurisdiction, to obtain an order of such court, commanding an inferior tribunal, board, corporation, or person, to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from office, trust, or station. Where discretion is left to the inferior tribunal, or person, the *mandamus* can only compel it to act, but cannot control such discretion."

Section 1268 of the Code provides: "When any person owns land on both sides of any railway, the corporation owning the same shall, when requested so to do, make and keep in good repair one cattle guard and one causeway or other adequate means of crossing the same, at such reasonable place as may be designated by the owner."

The defendant is a corporation, upon which is conferred certain powers and privileges. Because of the *station* of the corporation, as the possessor of power and privileges, certain duties are by law imposed. One of these duties imposed by law is that the defendant shall, when any person owns lands on both sides of its track, upon request, make one cattle

guard and one causeway or other means of crossing the same, at such reasonable place as the owner may designate.

Appellant, as we understand, impliedly concedes that the duty of providing a cattle guard, and some means of crossing the track, may be enforced by *mandamus*. It is claimed, however, that the duty of providing an open crossing is not enjoined by the statute and cannot be enforced by *mandamus*. The statute, it will be observed, provides that the railway company shall provide one cattle guard and one causeway or other adequate means of crossing the track. In this case the railway track extends between the plaintiff's house and the highway. In such a case the only crossing which is adequate is an open crossing, if the owner of the premises demands it. *Gray v. B. & M. R. R. Co.*, 37 Iowa, 119.

The duty of providing an open crossing, upon request, is, therefore, in this case imposed by statute. A performance of this duty may, under section 3373 of the Code, be enforced by *mandamus*. See High on Extraordinary Remedies, Ed. 1874, pages 200 and 228.

III. The principal point urged by the appellant is that the plaintiff is unreasonable in the demand that he have an open crossing at the place indicated. From the examination of the plat it will be seen that there are two ways in which the plaintiff may reach the highway.

*First.* By traveling directly north through the lane, as he proposes, eighty rods. *Second.* By constructing a new lane, and traveling directly west to defendant's depot, as suggested by defendant, reaching the highway in something more than eighty rods. The first route is one-half mile nearer to the school-house and to the mill, coal mine and cheese factory, patronized by the plaintiff. The second is one-half mile nearer to Albia, the county-seat and plaintiff's postoffice. Under the circumstances it is not unreasonable for the plaintiff to require an outlet to the highway north. It does not appear that the place which he has selected is a difficult one in which to provide a crossing. It should be presumed, in

the absence of proof to the contrary, from the fact of the plaintiff's selecting it, that it is in the place most convenient for him. If it is in the place most convenient for the plaintiff it is in a reasonable place, unless rendered unreasonable by its difficulty of construction or other fact. No such fact appears. In our opinion the judgment of the court is right.

AFFIRMED.