STATE OF IOWA, by JOHN Y. STONE, Attorney General, v. THE BURLINGTON, CEDAR RAPIDS & NORTHERN RAILWAY COMPANY, Appellant.

**Adequacy of Farm Crossings:** CONSTRUCTION STATUTE. Under Code, section 1268, requiring a grade crossing which is fully up to the standard of ordinary farm crossings at grade, and requiring railroad companies, whenever requested to do so by the owner of land on both sides of the track, to make and keep in good repair one cattle-guard and one causeway, or other adequate means of crossing the track, at such reasonable place as may be designated by the owner,—a crossing, access to which is through gates on either side of the track, is adequate for the purposes of a stock and dairy farm, the water supply and building of which are on the same side of the track, and are accessible from the highway without crossing the track, and the owner is not entitled, in addition thereto, to an under-grade passage for stock, although considerable inconvenience is caused by the necessity of opening the gates to allow the cattle to pass across the tracks to obtain water.

SAME. A land owner is entitled to adequate means of crossing a railroad track separating the different parts of his farm, and when that cannot be provided by a surface crossing, at a reasonable place, it must be by such other or additional means as are adequate, under Code, section 1268, requiring the railroad company, when requested to do so, to make and keep in good repair, one cattle-guard and one causeway, or other adequate means of crossing the track, at such reasonable place as may be designated by the owner.

SAME: *"Cattle-guard" defined.* The expression, "one cattle," in Code, section 1268, providing, that when land is owned on one or both sides of a railroad, the company shall, when requested to do so, make and keep in good repair, one "cattle-guard" and one causeway, or other adequate means of crossing the same, means such

guard as will prevent stock from going from the causeway onto the track on either side, and not merely a structure on one side of the causeway.

**Order of Railway Commissioners: REASONABLENESS.** Upon an application to the railroad commissioners for an order requiring a railroad to construct an undergrade crossing, in addition to a causeway connecting the two parts of appellant's farm, on the ground that it was inconvenient and inadequate, in that the owner was obliged to open and close gates each time he drove his stock.to water, it appeared that, in all other respects, it was or could be made adequate. *Held*, that an order requiring a railroad company to construct such undergrade crossing was unreasonable.

*Appeal from Keokuk District Court.*—HON. BENJAMIN McCOY, Judge.

MONDAY, OCTOBER, 26, 1896.

ACTION in equity, to enforce an order of the railroad commissioners, requiring the defendant to construct and maintain, for the complainant, Alexander Warnock, on his farm, an undergrade passageway for stock, in addition to his present grade crossing. Upon a hearing in the district court, decree was entered, affirming said order, and judgment was rendered against defendant for one hundred and seventy-five dollars attorney's fees for proscuting this action, from which decree and judgment the defendant appeals.— *Reversed.*

*Woodin & Son, S. K. Tracy,* and *Robert Mather* for appellant.

*Milton Remley,* attorney general, *C. G. Johnson,* and *L. C. Blanchard* for appellee.

GIVEN, J.—I.   Appellant's counsel state, as their first contention, that the order made and affirmed is "unreasonable and unjust; that the crossing now used by complainant is good, sufficient, adequate, and located

at a reasonable place." Appellee's counsel contend that, under the facts, the crossing now used is not adequate, and that said order is reasonable. The relief asked by Mr. Warnock is under section 1268, of the Code, and, to determine this contention, we first inquire to what he is entitled under said section, which section is as follows: "When any person owns land on both sides of any railway, the corporation owning the same shall, when requested to do so, make and keep in good repair one cattle-guard and one causeway, or other adequate means of crossing the same, at such reasonable place as may be designated by the owner." The words "one cattle-guard," as here used, do not mean a single structure on one side of a causeway, such as is usually known as a "cattle-guard," for such an arrangement would fail to serve the intended purpose, and be perilous to stock and to the operation of trains. "One cattle-guard," as here used, manifestly means such guard as will prevent stock from going from the causeway onto the track on either side. "A 'causeway' is defined by Webster to be a way raised above the natural level of the ground, by stones, earth, timber, fascines, etc. As applied to a railroad, it must mean a way raised above the road. A way so raised and properly constructed the law recognizes as adequate. *Gray v. Railroad Co.*, 37 Iowa, 123. In *State v. Chicago, M. & St. P. Ry. Co.*, 86 Iowa, at page 310 (53 N. W. Rep. 254), it is said "that grade crossings are the rule in this state." Owing to the topography of the state, and the usual size of farms, grade crossings are usually adequate, and hence, "are the rule in this state." Unquestionably, Mr. Warnock is entitled to one cattle-guard and one causeway, as defined above, that will afford him adequate means of crossing, and if, from any cause, he cannot have a cattle-guard and causeway that are adequate, he is entitled

to other adequate means of crossing. The intent of section 1268 plainly is that, when requested, the landowner is entitled to a causeway, a grade crossing, properly guarded, that will be adequate means of crossing; and when, from any cause, this cannot be, he is then entitled to have such other means of crossing as will be adequate. "Adequate; equal to what is required; suitable to the case or occasion; fully sufficient; proportionate." Standard Dict. Eng. Language; And. Law Dict. It has never been held under this statute that a landowner was entitled to more than one means of crossing. In *State v. Chicago, M. & St. P. Ry. Co., supra,* wherein an overhead crossing had been ordered, it is said: "We do not determine that there may not be cases where an overhead crossing may properly be required." In case of *Gray v. Railroad Co., supra,* the right of way deed contained this clause: "Provided the said company make and keep in good repair two causeways or other adequate means of crossing, if I should require it." It was held that, in accepting the deed, the company undertook to make and keep in repair two causeways or other adequate means of crossing; that one of the crossings provided was not adequate; and that the plaintiff was entitled to have it an open grade crossing, as a means of passing to and from his residence to the public highway. In view of the provision in said deed, this case is not authority for holding that a landowner may be entitled to more than one means of crossing. Our view of section 1268 is that adequate means of crossing is what the landowner is entitled to, and, when that cannot be provided by a surface crossing at a reasonable place, it must be by such other or additional means as are adequate. As tending to support this view, see *Curtis v. Railroad Co.,* 62 Iowa, 418 (17 N. W. Rep. 591); *Boggs v. Railroad Co.,* 54 Iowa, 435 (6 N. W. Rep. 744); *Gray v.*

*Railroad Co., supra; State v. Chicago, M. & St. P. Ry. Co., supra.*

II.   With these views of the law in mind, we now inquire whether, under the facts, the order as made and affirmed is reasonable.

The commissioners made a full finding of the facts, the correctness of which is not disputed, and which are as follows:   "That the complainant, Alexander Warnock, is the owner in fee and in possession of the southeast quarter of section 20, in township 77 N., of range 12 W., of fifth P. M., Iowa, in the county of Keokuk; that said premises are all inclosed and under cultivation, and the owner raises and sells cattle and horses, milk, and makes butter for market from a number of cows, ranging from 4 at some seasons, to 14 at others, and he uses said premises as a stock and dairy farm; that his entire herd of cattle, including milk cows, will average about 20 head, and his average number of horses about 15 head; that the defendant, the Burlington, Cedar Rapids & Northern Railway Company, owns and operates a line of railway which crosses said quarter section of land owned by plaintiff east and west, near the center of the same; that on this line of railroad on said premises, and about 20 rods west of the east line of said quarter section, there is a fill or embankment about eleven feet in hight or depth; that about 45 rods west of the east line of said premises there is a grade crossing for the use of plaintiff; that said line of railroad is fenced its entire length through or across said premises, and plaintiff's only means of access to said grade crossing is through gates placed in the line of the fence on each side of the railroad right of way, opposite said crossing; that said gates are 16 feet in length, composed of 6 boards about 6 inches in width, running lengthwise, with cross-pieces of same material, and said gates are

hung on a cross-piece nailed to two posts set near together, and, to open the same, the gates are shoved back on this cross-piece, and then carried around out of the way by the person opening the same; that said gates are heavy and somewhat unwieldy and difficult to handle, but are substantially such as are quite commonly used by farmers in that locality as well as by said railroad company at farm crossings; that said farm crossing at grade for plaintiff is in good condition in every respect, except as to said gates, and the same is in a good and convenient place for plaintiff; that the defendant is ready and willing to repair or replace said gates by proper and suitable ones, and, if that is done, plaintiff's present crossing is fully up to the standard of the usual and ordinary farm crossing at grade as ordinarily constructed in this state; that there is no cattle-guard upon either side of said crossing; that plaintiff's dwelling house and farm buildings are situated near the center of the southeast 40 acres of said quarter section in question, and his permanent supply of water for stock, consisting of a well and two artificial ponds, also grove used for shade and shelter to stock, with yards and other improvements for the convenient prosecution of his business, are all located or situated near to said dwelling house, on the same 40 acres, and all on the south part of said premises as divided by said line of railroad; and that there is a highway on the east, and also on the south line of said quarter section, and to reach the highway, as the plaintiff usually travels from his dwelling house, he goes south about 30 rods to the east and west highway, on the south line of said quarter section; that the distance from the plaintiff's dwelling house to the farm crossing he now has over the railroad is about 55 rods; and from said crossing to plaintiff's watering place for his stock is about 40 rods; that, to rotate his crops and properly carry

on his farming operations, it is necessary for plaintiff to have during some seasons, pasture for his stock on the north side of said railroad, and during the present season, and for several prior thereto, plaintiff's pasture for stock has been on that side of said railroad; that during a large part of the season all the water for plaintiff's stock was obtained by driving the same across said railroad from the north to the south side thereof, over said grade crossing; that from the evidence it does not appear reasonably certain that, at a reasonable expense, a permanent supply of water for stock, by wells or ponds, can be obtained on plaintiff's land on the north side of said railroad; that the defendant obtained its right of way across plaintiff's premises by deed from him, dated November 5, 1879, for the consideration of $112.50, said right of way being 100 feet wide across said premises, and, as said deed expresses it, 'for the purpose of constructing a railway thereon, and for all uses and purposes connected with the use of said railway, and to have, hold, and enjoy the land described forever, for any and all uses and purposes in any way connected with the construction, operation, preservation, occupation, and improvement of said railway;' 'that the railroad in question was built across the premises of the plaintiff in the latter part of the year 1879, and since that time said right of way has been in possession of defendant, and said railroad has been operated by it, and the plaintiff has had during that time only the ordinary farm crossing, at grade hereinbefore mentioned; that during the hot and dry season the plaintiff is put to much extra labor and expense in driving his milk cows and other stock back and forth across said railway track, which should be avoided by a crossing for such stock under said railway; that east of the present crossing, and at the embankment, or fill, about 20 rods east of the west line of plaintiff's premises

hereinbefore mentioned, there is a proper, reasonable, and convenient place to put in an undercrossing of sufficient width and height for stock to pass through; that such undercrossing should be not less than 4 feet in width and 6 feet high; that the cost, or expense, of putting in an undercrossing of that size, built in a good and substantial manner, of iron and stone, and covered with the latter material, so as to make the same as permanent as practicable, is about the sum of $575, and, if built of wood, about $250, as appears from the evidence submitted on part of the defendant; that the plaintiff has heretofore requested the defendant to put in a suitable undercrossing at the place hereinbefore specified, which the defendant has refused to do.'"

Upon these facts, the commissioners concluded and ordered as follows: "It seems to the commissioners, from the evidence in this case, that the complainant, Mr. Warnock, during a considerable portion of the year, suffers as much, if not greater, inconvenience and damage, by reason of having to open the gates at the crossing, as he now has, and in being compelled to drive his milk cows and other stock back and forth over said crossing to water and to shelter, than would many persons residing upon a farm in which a railroad had to be crossed to reach the dwelling house; and that the circumstances of this case would bring it within the principles laid down by the supreme court in the cases of *Gray v. Railroad Co.*, and *Boggs v. Railroad Co.*, and the *Cutler Case*, herein referred to. And the commissioners find, as a matter of fact, that the said complainant has not an adequate means of crossing defendant's railroad, as claimed by him in his petition herein; that his means of crossing said railroad would be adequate if, in addition to his present grade crossing, a passage for stock, four feet wide by six feet high, was made under said

railroad at the embankment or fill hereinbefore mentioned, east of said grade crossing. It is hereby ordered by said board of railroad commissioners that within sixty days after being served with a copy of this order, that the said defendant, the Burlington, Cedar Rapids & Northern Railway Company, construct, put in, and thereafter maintain for the complainant the said undergrade crossing or passageway for stock at the place, and of the size or dimensions, hereinbefore specified."

On the hearing in the district court, appellant introduced evidence tending to show that an opening in the embankment, such as that ordered, would render the roadbed less safe than the solid embankment; that, there being a less depth of earth over the opening than on each side of it, the embankment would "heave" more from frost than would the surface over the opening, thereby causing a depression in the track that would increase the danger from broken rails. Appellee introduced evidence tending to show the contrary, and also showing that the annual rental of his farm would be worth more with than without the underground passage way.

III. The order of the commissioners and the affirmance thereof by the district court, seem to be based upon the view taken of the cases of *Gray v. Railroad Co.*, 37 Iowa, 120; *Boggs v. Railroad Co.*, 54 Iowa, 435 (6 N. W. Rep. 744), and *State v. Mason City & Ft. D. Ry. Co.*, 85 Iowa, 517 (52 N. W. Rep. 490), spoken of as the *"Cutler Case."* It has been repeatedly announced by this court, that each case of this kind must be determined by its own facts. We think a careful examination of the cases relied upon, will show that they are distinguishable from the case at bar in several important particulars. In *Gray's Case* it was held that he had the right to require two crossings, because of the clause in the right of way

deed. It was also held that, the language of the deed being the same as the statute, as to the kind of crossings, they were to be of the kind recognized in the statute; "that is, they are to be causeways, which the statute regards as adequate crossings, or other adequate crossings." In that case the plaintiff had a grade crossing, inclosed with gates, between his residence and the public highway, by which he went to and from his home. The court held that this crossing was inadequate, and that Mr. Gray had the right to require an open crossing to the highway. The reasons given for this conclusion were, the condition of the gates, and the plaintiff's right to ready access to the highway. The court says: "The railroad has thus, as the evidence shows, interposed itself between plaintiff and the highway, and leaving him egress only through two ill-constructed and heavy gates. Every time that he or any member of his family has occasion to leave the premises, whether upon business or pleasure, the way lies through these barriers, which constitute the only means of reaching the county town, or elections, or school meetings, or church, or of making a family visit to a neighbor." The case of *Bankhead v. Brown*, 25 Iowa, 540, is quoted from in that opinion, as follows: "Without a road, or the means of getting a road, to the farm of a citizen, he could not well obey the venire that commands him to attend at the court as a juror, could not well pay his taxes, vote, reach the church, or send his children to school. Hence the state may properly provide for the establishment of a public road or highway, to enable every citizen to discharge his duties. The state is not bound to allow its citizens to be walled in, insulated, imprisoned, but may provide them a way of deliverance." It is further said: "With these considerations in view, we are of opinion that where a railway runs between the residence of a citizen, and the

only means which he has of reaching a highway, that he has a right to insist that an open crossing shall be provided for him, by means whereof he may reach the highway without stopping to open gates or remove open bars.  He has a right to as free and unobstructed egress as the circumstances of the case reasonably admit.  And, whilst the railroad company has a right to intervene between him and the highway, it has not the right, unnecessarily, to subject him to inconvenience and burdens, which can be guarded against by the exercise of reasonable care, and at reasonable outlay.  The necessities of the citizen often require that he shall be able to reach the highway without any delay.  Sometimes his wife and children, unattended, desire egress, and, under such circumstances, a blockade of the way by gates and bars, encroaches unreasonably upon the right, which the government guaranties the citizen, and in which he has a right to demand protection."  In the *Case of Boggs*, the demand was, under the statute, for an open grade crossing between the plaintiff's residence and the highway, by which he went to and from his home.  The court says: "In this case the railway track extends between the plaintiff's house and the highway.  In such a case the only crossing which is adequate is an open crossing, if the owner of the premises demands it.  *Gray v. Railroad Co.*, 37 Iowa, 119.  The duty of providing an open crossing upon request is therefore, in this case, imposed by statute."  It will be observed that the demand in each of these cases was for an open crossing to the public highway, and that the conclusions reached were based upon the rights of the complainants to have ready access to the highway, while in this, demand is for two crossings to farm and pasture land.  The purpose for which the crossings were demanded in those cases was different from that for which they are demanded in this.  Those crossings were such as to

be used every day, and frequently many times a day, throughout the year; while this is only required for use during the pasturing season, and mostly during the dry portions of the season. In those cases the complainants had no other means of reaching the highway, while in this, with the gates replaced as offered, Mr. Warnock has a crossing to his pasture "fully up to the standard of the usual and ordinary farm crossing at grade." The only complaint made against the present crossing is that gates have to be opened and closed. Ordinarily, a farm crossing without gates would be condemned. "There would certainly be a grave objection to a crossing in a pasture that would allow cattle to enter upon the track and stop there. It would unquestionably be a source of danger." *Curtis v. Railway Co., supra.* We do not think the facts of this case bring it within the rules or reasoning of the *Cases of Gray,* or of *Boggs.* The *"Cutler Case,"* so called, is more like this in its facts. The case came to this court on appeal from a ruling on a demurrer by which the question as to the jurisdiction of the commissioners and of the district court was presented and passed upon. The facts of the case were not before this court, and were not considered by it. The opinion concludes as follows: "The justness, or reasonableness, of the order making a change from a grade to an undergrade crossing is not presented to us by the record." Referring to the commissioners' reports for the years 1889 (page 1039) and 1890 (page 850), we find the facts to be, in substance, as follows: Mr. Cutler owned eighty acres of land, over which the defendant's track ran diagonally across his pasture land. "He asks whether the railway company can fence the road, simply put in gates, and cut him off from the water unless he drives his stock both ways. He thinks he is entitled to an open or an under crossing." The commissioners, in their

report, say: "The commissioners understand from the statement of the case that an embankment in some places at least eight feet high runs across this piece of land, and that the crossing is at a point where it is that high. They do not learn from the papers whether a better point could have been found, and conclude that, for a grade crossing, the place selected is as available as any other. An under or an open crossing evidently would meet all the present requirements of Mr. Cutler." They further say: "It seems to be claimed and admitted that there is no practical difficulty in putting in an under crossing in this pasture, and it is evident that the land can only be used to advantage for the purpose that the owner desires to use it by means of an under crossing." Having cited the *Cases of Gray*, and of *Curtis*, *supra*, they conclude as follows: "A careful examination of the text of the two cases above noted, leads the commissioners to the conclusion that an over crossing of an embankment eight feet high, with gates on each side is, under the conditions stated, not an adequate crossing, and that an under crossing would be adequate for all purposes indicated in this complaint." A re-hearing was granted, and, after viewing the premises, the commissioners adhered to the order first made. Here we have a case presenting an exception to the general rule of grade crossings. Owing to the height of the embankment and the fact that safety requires gates at farm crossings, the grade crossing was not regarded adequate, and therefore the other was ordered. It was because of the embankment that traversed Mr. Cutler's land that it was held impracticable to have an adequate crossing at grade. An under crossing was deemed the only adequate means under the circumstances, and therefore it was ordered.

In this case, there is no embankment or other cause to prevent a grade crossing as fully adequate as

grade farm crossings can be made. We do not think *Cutler's Case* is within the reasoning of the two cases noted, nor that it is authority for the order made in this case.

IV. We now inquire, from the facts of this case, whether the order in question is reasonable, or, in other words, whether the under crossing ordered is necessary to afford Mr. Warnock adequate means of crossing. In determining this, we must have in mind that, under the law, he is entitled, not to the most convenient or profitable means of crossing, but to adequate means; that one grade crossing, with gates and guard, is the rule in such cases; and that it is only when a grade crossing is inadequate that other, or additional means, may be ordered. In determining what are adequate means of crossing, we must consider the purpose for which the same are to be used, the rights of the respective parties, and all facts and circumstances tending to show what is reasonable in the premises. It will be observed, that the undergrade passageway is not asked, nor ordered in lieu of, but in addition to, the causeway already provided. It is not asked nor ordered because of their being no cattle-guard at said causeway, nor because the gates are cumbersome, and hard to open and close; neither is it because the causeway is unsuitable as a crossing. If a cattle-guard and other gates were asked and ordered, the order would be reasonable. Mr. Warnock was asked: If the defendant would put in cattle-guards at the present crossing, and a wing fence, and reduce the weight of the gates, so they could be easily handled, would that satisfy you, without this under crossing?" He answered: "No; I have no time to handle it." The object of this proceeding is solely to obtain an under crossing for cattle to pass in. A crossing with gates would not satisfy me. What I want is **an under cattle**

pass, so the cattle can get to water when they want to. This right of way was fenced across the farm several years prior to this suit. The present crossing was put in a few years ago. I asked for it. Have farmed this land since 1869. Got a deed for it in 1875. No stock ever struck on this stone crossing that I know of. I would not be satisfied if a better gate was put in there. Have never been engaged in railroad building or engineering." The order is solely for the reason that it will be convenient and profitable for the land owner to have this additional means of crossing. That it would be convenient, and to some extent profitable, to Mr. Warnock, to have both means of crossing, there can be no question. It would be convenient that his stock might pass at pleasure, and profitable in the advantage to his stock, and the saving of labor in driving them during the pasturing season. It would, no doubt, be convenient, and may be profitable, to Mr. Warnock, if the railroad was entirely removed from his farm; but it is rightfully there, subject to the duty of providing him adequate means of crossing. While convenience and profit to the land owner and expense to the company are proper to be considered, neither, taken alone, is necessarily ground for making or refusing an order like that in question. Mr. Warnock is entitled to adequate means of crossing, and it seems not to be questioned but that, if the causeway now used is inadequate, he is entitled to the under crossing ordered. The question, then, is whether the causeway, with proper gates and guards, is adequate. This question finds ready answer in the facts that this causeway is the kind of crossing contemplated in the statute as usually adequate; that is "fully up to the standard of the usual and ordinary farm crossings at grade"; and that the only complaint made against it is that the gates have

to be opened and closed.  We have said that, except where unusual conditions exist, such crossings should have gates.  Therefore, if this complaint is to prevail, most farm crossings at grade must be abandoned as inadequate, because of the inconvenience and labor of opening and closing the gates.  Surely, such is not the intent of section 1268.  This causeway is available for the crossing of teams, as well as loose animals; while the under crossing would be only available for the latter.  Therefore the causeway may not be dispensed with.  It seems clear to us that the causeway is adequate as a means of crossing, within the meaning of the statute, and that, under the facts, it is not reasonable to require the appellant to construct and maintain the under crossing in addition thereto.

Other questions made by appellant are discussed, but, in the view we take of the case on its merits, they need not be noticed.  For the reasons stated, the order and judgment of the district court is REVERSED.