THE STATE OF IOWA, Appellee, v. MASON CITY & FORT DODGE RAILWAY COMPANY, Appellant.

1. **Railroads:** PRIVATE CROSSING: JURISDICTION OF RAILWAY COMMISSION. The right to the construction of a private railway crossing, under the provisions of section 1268 of the Code, is so far public in its nature as to impose upon the state the duty of its enforcement, and the existence of such right under particular circumstances is, therefore, within the jurisdiction of the board of railroad commissioners to determine.

2. ———: ———: ORDERS OF RAILWAY COMMISSION: JURISDICTION OF DISTRICT COURTS TO ENFORCE. An order by the railroad commissioners for the construction of such a crossing is enforceable by the district court under the provisions of chapter 133, of the laws of 1884, giving to said court "jurisdiction to enforce by proper decrees * * * the rulings, orders and regulations affecting public right, made * * * by the board of railroad commissioners."

3. ———: ———: ———: CONSTITUTIONAL LAW: EXERCISE OF JUDICIAL POWERS. The order of the railroad commissioners in such case not being in the nature of a judgment, binding upon the parties, the law giving the commissioners jurisdiction in such cases to determine the right to a crossing under the law, and to order its construction, is not in conflict with section 1, of article 5, of the constitution of this state, vesting the judicial powers of the state in a supreme court, district court, and such other courts as the legislature may from time to time establish.

4. ———: ———: ———: REMEDY FOR ENFORCEMENT: MANDAMUS NOT EXCLUSIVE. The remedy provided by statute for the enforcement of orders of the railroad commissioners by action of mandamus is not exclusive.

*Appeal from Wright District Court.*—HON. D. R. HIND-
MAN, Judge.

MONDAY, MAY 23, 1892.

THE defendant's line of road is constructed and
operated through the land of one George L. Cutler,
and on the seventh day of October, 1889, the said Cut-
ler lodged with the board of railroad commissioners a
complaint to the effect that owing to the manner of
such railroad crossing his land he was entitled to an
undergrade crossing, which the company had neglected
and refused to provide for him.   Upon notice to the
parties the board of railroad commissioners investigated
the matter, and made its order that the company should
construct such a crossing.   A rehearing was at the
instance of the company granted, the result of which
was an adherence to the former conclusion.   The com-
pany neglected or refused to comply with the order,
and this proceeding was instituted at the instance of
the commissioners in the name of the state for its
enforcement.   To the petition the defendant company
demurred, and the grounds thereof are that both the
commissioners and the district court were without
jurisdiction of the subject-matter.   The district court
overruled the demurrer, and gave judgment for the
plaintiff, from which the defendant appeals.—*Affirmed.*

*J. F. Duncombe*, for appellant.

*John Y. Stone*, Attorney General, and *T. C. Daw-
son*, for the state.

GRANGER, J.—I.   It is first urged that the com-
missioners have no authority to make such an order,
because it affects a private, and not a
public, right, and that the law authorizing
railroad commissioners to make "rules,
orders and regulations" as to railroads

1. RAILROADS:
private cross-
ing: jurisdic-
tion of railway
commission.

relates only to such corporations in their capacity as common carriers, and to matters affecting the public as distinguished from private or individual rights.

To a proper consideration of the point presented we should somewhat particularize the complaints upon which the commissioners acted in making the order as they appear in the petition, and are admitted by the demurrer. It appears from these statements that the land of Mr. Cutler is by the railroad track cut diagonally, and in nearly equal parts; that it is an inclosure used as a pasture, in which is kept a large amount of stock; that it is "necessary to drive" said stock over and across the said defendant's road as often as twice a day; "and that the defendant refused and still refuses to build or furnish an adequate crossing for him so that he can safely transfer his said stock from one side of the defendant's said railroad track to the other in said pasture." By Code, section 1268, it is provided: "When any person owns land on both sides of any railway, the corporation owning the same shall, when requested so to do, make and keep in good repair one cattleguard and one causeway or other adequate means of crossing the same at such reasonable place as may be designated by the owner."

It now becomes a question whether or not the adequate means of crossing railway tracks within the meaning of the section pertains to private or individual rights to the exclusion of a public right or obligation in regard to them. In judicial proceedings there has been considerable comment in regard to the public character of such corporations and their amenability to legislative control because of that character. The construction of railway lines of necessity requires that the estates of others shall in a sense become subservient to them. The public demand for them because of their public utility has induced legislation by which land-owners must, for a compensation, if not agreed upon to be.

settled under the forms of law, yield a right of way over their lands for railway lines. This exercise of eminent domain in their favor is because of their "public character, relations, and uses." Such rights are not granted in aid of mere private purposes.

These facts are highly important in determining to what extent rights and obligations growing out of the exercise of corporate functions as a result of such legislation are public or private. In so far as the law gives to the corporation rights and privileges, as against the land-owner, for the construction and maintenance of railway lines, the rights and privileges are of a public nature, and enforceable against the land-owner because of that nature. The legislative authority thus exercised in favor of the corporation can only be justified by the same authority granting adequate protection to the land-owner, by prescribing the manner of the exercise of such functions by the corporation and in a way on the one hand to preserve to the public and the corporation the full benefits designed by the franchise, and on the other to preserve to the land-owner, to the fullest extent consistent with the franchise, the enjoyment of his property rights.

The section of the statute quoted is a part of the law under which the defendant company accepted the franchise and constructed its railway, and by the admitted facts of the case it has failed to provide an adequate crossing on the land of Mr. Cutler. Its obligation to provide such a crossing arises out of its acceptance of corporate rights under the general laws of the state. The relation of the land-owner to the corporation is involuntary,—the result of a public necessity. His rights as against the corporation to an adequate crossing are not in the usual sense contractual. The obligation of the corporation to make such crossings is primarily to the public, resulting from the acceptance of its franchise. It may inure, under legal rules, to the

benefit of the land-owner, but not in such a sense that
the public is divested of a right or interest therein.   If
such right or interest is no more than to enforce a com-
pliance with the terms and conditions of the grant to
the corporation, and that in respect to individual rights
arising out of the transactions of the public with the
corporation, it is still a right that the law equitably
administered will recognize.   If the public, in further-
ance of its general interests, says to A., a land-owner,
"You must yield a right of way over your land to a
corporation for railway purposes, but a condition of
this requirement is that adequate means of crossing
such railway shall be preserved to you," is it not in
harmony with equity and good government that the
public, while compelling A. to observe the terms of the
grant in favor of the corporation, should preserve and
exercise a right to compel the corporation to observe
the particular conditions of its acceptance from the
public, whereby the individual rights of A., pertaining
expressly to the grant, may be preserved?   Let us view
the situation in the light of the facts in this case.   The
defendant company has accepted its franchise and con-
structed its road across the land of Mr. Cutler.   The
use of the land as a pasture requires that a large amount
of stock shall cross this road twice a day.   Mr. Cutler
is entitled to an adequate crossing which the company,
by its demurrer, admits that it has not given him.   We
are of the opinion that the public has such a right or
interest arising out of the grant of the franchise that it
may, if, indeed, it should not, compel the corporation
to observe its undertaking.   The contention in behalf
of the public interest in the crossing is somewhat aided
by the fact, that the crossing for the passage of stock
over the track affects the public safety in the operation
of trains.   In many instances the added security of an
undergrade over a grade crossing might be the control-
ling consideration in ordering a change.

We should next inquire if the public, through the legislative power, has attempted the discharge of such a duty, because it is urged that the statute creating the board of railroad commissioners, and defining their duties, gives to the board no authority over "private crossings," and the crossing in question would come within that class, for it is not one for use by the public. Section 3, chapter 77 of Acts of the Seventeenth General Assembly, provides that "said commissioners shall have the general supervision of all roads in the state operated by steam, and shall inquire into any neglect or violation of the laws of this state by any railroad corporation doing business therein, or by the officers, agents, or employees thereof, and shall also from time to time examine and inspect the condition of each railroad in the state, and of its equipments, and the manner of its conduct and management, with reference to the public safety and convenience, and, for the purpose of keeping the several railroad companies advised as to the safety of their bridges, shall make a semi-annual examination of the same and report their condition to the said companies. * * * Whenever, in the judgment of the railroad commissioners, it shall appear that any railroad corporation fails *in any respect or particular* to comply with the terms of its charter or the *laws of the state*, or whenever in their judgment any repairs are necessary upon its road, or any addition to its rolling stock, or any addition to or change of its stations or station houses, or any change in its rates of fare for transporting freight or passengers, or any change in the mode of operating its road and conducting its business is reasonable and expedient in order to promote the security, convenience, and accommodation of the public, said railroad commissioners shall inform such railroad corporation of the improvements and changes which they adjudge to be proper by a notice thereof in writing. * * * " This act

makes no provisions for the commissioners making orders to be observed other than in an advisory way, as the law for the enforcement of these orders is a later act to be noticed hereafter. The main purport of the act cited seems to have been, by the aid of the commissioners, to gather information as to the construction, operation and management of railroads, with a view to public information and such changes and improvements as might result from a notice to the companies of what the commissioners adjudged proper. We think it is hardly to be doubted that it was the duty of the commissioners under that act to inquire into violations of the law as to private railway crossings, as well as other violations of the law, for the language is "and shall inquire into any neglect or violation of the laws of the state;" and again: "Whenever, in the judgment of the railroad commissioners, it shall appear that any railroad corporation fails to comply with the . * * * laws of the state in any respect or particular, * * * said railroad commissioners shall inform such railroad corporation of the improvements and changes which they deem proper," etc. No good reason is suggested, nor do we think there can be, why this comprehensive language does not embrace an inquiry by the commissioners into violations of the law in regard to private crossings as well as violations in regard to other particulars of construction. Our conclusions, then, are that the railroad commissioners, in cases where a person owns land on both sides of a railroad, have authority to make inquiry and orders as to an adequate means of crossing the same, and that a violation of the law by the corporation in respect thereto involves a public right.

It is said in argument "that if, by implication, the board of railroad commissioners have the jurisdiction and power to make this order, they have the jurisdiction and power to make any order that any court can make

relating to railroad companies, whether the same be a public duty or a private duty." Such a conclusion does not logically follow. Our holding is placed on the relation and obligation of the corporation to the public at the inception of its interprise, and in no way involves contractual or business relations directly between the corporation and the individual. As we have said, the relation of the individual to the corporation as to the crossing is not voluntary. It comes of a public necessity, under a rule that private interests must yield to the public good. It must be in such a case that the public may stand as a protector of an individual against the unlawful use of its grant or franchise.

II. It is insisted that the courts have no jurisdiction to enforce such an order of the commissioners.

2. —: —: orders of railway commissioners: jurisdiction of district courts to enforce.
By chapter 133 of Laws of 1884, it is provided that "the * * * district courts of this state shall have jurisdiction to enforce, by proper decrees, injunctions and orders, the rulings, orders and regulations affecting public right, made * * * by the board of railroad commissioners." The contention is upon the jurisdiction being dependent upon orders affecting public rights, and the point is pressed in argument that this is not a public, but a private, right. The consideration of the question of public and private rights, in connection with the authority of the board of commissioners, is conclusive of the question, and it is not important that we should pursue it further. It is said by the appellee that if the court is not satisfied that it has power to enforce the order under the provisions of the act of the Twentieth General Assembly, section 16 of Acts of the Twenty-second General Assembly gives explicitly the power to enforce it. The possible, if not probable, doubt of that act being applicable to

orders of this character has induced us to determine the case without reference to it.

III. Some constitutional objections to the jurisdiction of the railroad commissioners are presented.

3. constitutional law: exercise of judicial powers.

Article 5, section 1, of the constitution of the state provides that, "the judicial department shall be vested in a supreme court, district court and such other courts inferior to the supreme court as the general Assembly may from time to time establish." The inquiry is made, "Is the board of railroad commissions a court?" An answer to the query is not essential to the question of its jurisdiction. The order of the board, as a result of its investigation, is not the judgment or conclusion that binds the parties. It is merely by the law made the basis of an action wherein the rights of the parties are investigated and determined by the prescribed rules of judicial inquiry. We are not to be understood as holding that the board of commissioners is not invested, in some cases, with judicial authority. It is a question we do not determine.

IV. We are further cited to the constitutional provision that "the district court shall be a court of law and equity, which shall be distinct and separate jurisdictions, and shall have jurisdiction in civil and criminal matters arising in their respective districts in such manner as shall be prescribed by law." It is claimed that the remedy in such a case is by *mandamus*, under the decisions of this court, which is said to be a law proceeding, and that, the law having prescribed such a proceeding, it is exclusive. It was held in *Boggs v. C., B. & Q. R'y Co.*, 54 Iowa, 435, that *mandamus* was a proper remedy to enforce such right, and other cases have been prosecuted by such a proceeding; but it is not held that such a remedy is exclusive. It should not be claimed that but a single remedy can be avail-

able to a party. The doctrine of the "election of remedies" is old and familiar. It may further be said that the statute giving the courts jurisdiction to enforce orders of the commissioners was enacted after the case of *Boggs v. C., B. & Q. R'y Co.*, was decided. It has not been held that an action to enforce the orders of the commissioners must be by proceedings by *mandamus*, nor by ordinary proceedings. It is provided by the act giving the courts jurisdiction in such cases that they shall be "by equitable actions in the name of the state." The law thus creates a new action, and defines the jurisdiction of the court having cognizance of it. If, indeed, there was error as as to the kind of proceeding, it was waived by a failure to move for its correction "at the time and in the manner prescribed." Code, section 2519.

The justness or reasonableness of the order making a change from a grade to an undergrade crossing is not presented to us by the record. The judgment of the district court is AFFIRMED.