FIRST NATIONAL BANK OF PIPESTONE, MINNESOTA, v. ROWLEY, DRIGGS & HUMPHREYS, Appellants.

**Partnership:** CONTRACT FOR BENEFIT OF THIRD PERSONS.  A live stock commission firm authorized a bank to advance money to a buyer and agreed to honor the bank's drafts for such advances.  Upon a change in the firm, one member, who was also a member of the old one, wrote the buyer, in substance, that the new firm would continue the old arrangement.  He showed this letter to the bank and obtained an advance by reason of it.  A draft drawn for it was not accepted.

*Held,* such a partnership had authority to make such a contract through one of its members.  Knowledge on part of one member on what arrangement the buyer was shipping is the knowledge of the firm, though the partner first got such information while a member of the old firm.  At any rate, a knowledge acquired as a member of the former firm is material to explain what "arrangement" was meant by the letter written after the formation of the new firm.  The letter was available to the bank upon being shown it, though it was not addressed to it.

**Practice.**  It is not error to overrule a motion to transfer a cause containing both a law and an equitable issue to the law calendar, though no motion to separate or other challenge was addressed to the petition.

*Appeal from  Woodbury District  Court.*—HON.  F. R. GAYNOR, Judge.

THURSDAY, DECEMBER 13, 1894.

SUIT in equity to establish the trust character of certain funds in the hands of the defendants, and to recover from them the amount of a draft drawn by one H. E. Brandt upon defendants, which it is claimed they agreed to pay.  Judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Lewis & Holmes* for appellant.

*Joy, Call & Joy* for appellee.

DEEMER, J.—In the year 1891, a copartnership doing business under the firm name of Humphreys, Ryan & Sowers was engaged in the live stock commission business at Sioux City, Iowa. This firm, desiring to have one H. E. Brandt purchase live stock for them in southern Minnesota and northern Iowa, and he being without means, applied to plaintiff, a national bank at Pipestone, Minnesota, to furnish Brandt money with which to purchase stock, and promised and agreed both orally and in writing to honor, and pay, all drafts upon them for the purchase price of the stock. Under their arrangement, plaintiff paid the checks of Brandt given to those from whom he purchased stock, and the commission firm honored and paid all drafts drawn by Brandt upon them for the amount of money paid out by the bank. About the first day of June the firm of Humphreys, Ryan & Sowers dissolved, and was succeeded by Humphreys & Ryan, the Humphreys in this last firm being the same person as the Humphreys in the former copartnership. This firm continued the arrangement made by the first-named commission house with the plaintiff, except that they agreed to pay from June 30 on "only the net proceeds from the sale of his [Brandt's] consignments, up to the amount of the total cost of the same." Under this arrangement Brandt continued to purchase stock, which was paid for by the plaintiff, and Humphreys & Ryan honored and paid drafts drawn by Brandt upon them, representing the purchase price of the stock bought by him. About the first of August, 1891, the firm of Humphreys & Ryan dissolved and Humphreys became a member of the copartnership known as Rowley, Driggs & Humphreys, the defendants in this case. It is contended on the part of the plaintiff that the

arrangement had with the two prior firms was continued with the defendants and that the defendants agreed to honor all drafts drawn upon them by Brandt for the purchase price of stock.    This claim is denied by the defendants and this is the main question of fact in the case.

There is no doubt in our minds but that plaintiff had the arrangement above set forth with the two first-named firms, with which Humphreys was connected, and that quite an amount of business was conducted under this arrangement.    It also appears that there was a loss on the business done by Brandt for these firms, and that at the time Humphreys & Ryan quit business Brandt was owing them more than six hundred dollars.    The amount of Brandt's indebtedness to Humphreys & Ryan was turned over to the new firm of Rowley, Driggs & Humphreys as part of Humphreys' investment, and treated as an asset of the new firm. Brandt continued to buy cattle for the new firm, with money furnished by the plaintiff; and the defendant, in the months of October and November, honored and paid two drafts drawn by Brandt, just as the other firms had done before them.    During the two or three days prior to the twenty-third day of November, plaintiff paid out for stock purchased by Brandt the sum of seven hundred and fifty-nine dollars and fifty-five cents, and at the time of the shipment of the stock so purchased Brandt drew a draft for the amount on the money so furnished upon defendants, which draft the defendants refused to accept, and the same was protested for nonacceptance on November 25, 1891, and returned to plaintiff.    It appears that defendants sold the stock shipped about the time the draft was drawn, and applied the net proceeds upon the account of Brandt, which they had taken from Humphreys as a part of his investment.    In addition to the fact that Brandt, with the knowledge of the defendants, or at

least with the knowledge of Humphreys, a member of the firm, continued to buy stock and ship to the new firm, as he had done for the two former ones, and in addition to the fact that the defendants, or Humphreys, knew of, or must have known, that the bank was furnishing money to pay for the stock purchased by Brandt, and the further fact that the defendants cashed two drafts drawn by Brandt upon them for stock so purchased and paid for by the plaintiff, we find that about the time of the organization of the defendant firm Humphreys wrote Brandt the following letter:

"SIOUX CITY, IOWA, July 27, 1891.

"FRIEND BRANDT:—After August 1st H. & R. will close up their business, and I will be with R. & D., making it Rowley, Driggs & Humphreys.   I take your acc. with me, and you will have the same treatment as in the past.   I will stick by you, and I want you to stick by me.·  If you ship any time before Friday, bill as before; after that to the new firm; and I will pay your drafts, no matter whether they get in before or after August 1st.·  I am sure we will be able to do better by all my friends.   I will handle the hogs, and I know you will like Charley Driggs.   If I see you before, all right; if not, remember me.   Market seems to be going down on both cattle and hogs slowly.

"Your friend,      S. G. HUMPHREYS."

And after the defendant firm was organized, it, by S. G. Humphreys, a member thereof, wrote Brandt this:

"SIOUX CITY, IOWA, August 3, 1891.

"*H. E. Brandt, Esq., Pipestone, Minn.*

"DEAR SIR.—Yours of the 2d, referring to the new arrangement, at hand, and in reply to same would say your acct. with H. & R. has been transferred to us, and we will be pleased to continue with you under the same arrangement as you had with H. & R.   Just keep on as you have been lately, slow and careful,

doing the best you can, and we will take pleasure in doing our part at this end. If you intend coming on Sunday next, let us know by Saturday's mail and we will meet you at the Gordon Hotel.

"Yours, truly,

"ROWLEY, DRIGGS & HUMPHREYS, by H."

Brandt took this last letter to the plaintiff, and on the strength of it, the bank says, it continued to pay for stock purchased by Brandt as it had done before. The writing of this last letter is not denied, nor is it questioned but that it was written after the defendant firm was organized. But it is insisted—*First*, that the letter is not binding upon the defendants, because, although Humphreys had knowledge of the previous arrangements made by the other firms of which he was a member, yet such knowledge was not the knowledge of the firm; and, *second*, that the letter was not addressed to the plaintiff, and there was no agreement with it to continue the former business arrangement. With reference to the first proposition, it can not be doubted that Humphreys, as a member of the defendant firm, had authority to make the agreement it is claimed he did make, for it was within the scope of the partnership business. And if he had the authority, then his knowledge of the previous arrangements with the other firms is material and competent to show the extent and character of the agreement. In this connection it is not necessary to determine whether knowledge gained by him while a member of the other firms would be binding upon the defendant firm after he became a member of it or not, for the previous arrangements are considered merely to determine the character and extent of the new arrangement made by the defendant firm. It may properly be said, however, that as defendants received the stock shipped to them by Brandt with knowledge on the part of one of its members as to how it was shipped,

such knowledge is binding on the firm, although acquired in the first instance while this partner was the member of another firm.   It is quite clear that the letter was binding upon the new firm, and that the "arrangement" therein referred to was the one made by the other firms, of which Humphreys was a member, with the plaintiff.   As to the second proposition, it is true that the letter was not written to the plaintiff, but the evidence establishes that it was shown to the officers of the bank, and that it acted thereon; and defendants can not now be heard to say that they are not liable.   It need not be shown that the contract was made directly with the plaintiffs, for if it was made with Brandt for the benefit of plaintiffs, the plaintiffs can rely upon and enforce it. *McHose v. Dutton*, 55 Iowa, 728, 8 N. W. Rep. 667; *Courtright v. Deeds*, 37 Iowa, 503; *Johnson v. Collins*, 14 Iowa, 64; *Johnson v. Knapp*, 36 Iowa, 616; *Knott v. Railroad Co.*, 84 Iowa, 462, 51 N. W. Rep. 57.   If the contract was made by Humphreys, and was within the scope of the business of the defendant, it is entirely immaterial that the other members of the firm, Rowley and Driggs, had no notice or knowledge thereof.   The district court was right in holding that an arrangement was made with Brandt as claimed; that the plaintiff advanced money thereon, and is entitled to recover the net amount of the proceeds from the sale of the stock shipped to defendants, to wit, six hundred and sixty-eight dollars and twenty-six cents with interest, which we understand to be the amount allowed by the lower court.

II.   This disposition of the case renders a consideration of plaintiff's claim to an equity in the funds arising from the sale of the stock, because of their trust character, wholly unnecessary, except as it bears upon a motion filed in the case.

III.   The petition in the case, although in form containing but one count, yet in substance was com-

posed of two,—one at law, to recover upon the agreement above set forth; and the other in equity, to impress a trust upon the funds received by defendants from the sale of the stock which had been purchased with plaintiff's money. No motion was made to separate the petition into counts, nor was there any attack upon it in any manner whatever. But, after issues were joined, defendants moved to transfer the whole cause to the law calendar for trial to a jury. This motion was overruled, and this ruling is claimed to be error. The ruling was manifestly correct. It would have been error to have transferred the equitable issues to the law side of the docket for trial to a jury. We discover no error in the proceedings, and the judgment is AFFIRMED.