PETER HERRSTROM v. NEWTON & NORTHWESTERN RAIL-
ROAD COMPANY, Appellant.

**Railroads:** PRIVATE CROSSINGS: MANDAMUS.   Code Section 2022 con-
1   templates a private railway crossing which will connect the separate parts of an owner's farm, without requiring him to go into the highway to reach the same, and he may compel the construction of such a crossing unless he has waived the right thereto.

**Same:** INSTRUCTION.   The court's instructions when construed to-
2   gether are held to properly submit the issue as to whether a public crossing, constructed according to agreement, was to be in lieu of a private way, to which by statute the plaintiff was entitled.

**Waiver:** BURDEN OF PROOF.   One who pleads the waiver of a right
3   has the burden of proof on that issue.

**Assent to crossing:** INSTRUCTION.   On the issue of assent to the
4   construction of a public crossing in lieu of a private way, the court is not required to tell the jury what would amount to an assent.

**Assent to crossing:** EVIDENCE.   Under the evidence plaintiff's waiver
5   of his right to a private crossing was a question for the jury and defendant was not entitled to a directed verdict.

**Grade crossings:** EVIDENCE.   On the question of whether a grade
6   crossing was practicable and would afford plaintiff adequate means of passing from one portion of his land to another, the evidence is reviewed and held to present an issue of fact for the jury.

**Expense of overhead crossing:** DEFENSE.   The fact that the cost of
7   an overhead crossing would exceed the benefits derived by the landowner is not a defense to a proceeding to compel a private way, where it has been determined that a grade crossing was not practicable.

| 129 | 507 |
| 130 | 751 |

| 129 | 507 |
| 137 | 328 |

| 129 | 507 |
| 142 | 482 |

Pleadings: AMENDMENT. New issues should not be injected into a case by amendment after conclusion of the argument to the jury, unless clearly shown that justice will be promoted thereby.

Estoppel. Mere allegations that a landowner consented to the construction of a certain public crossing are insufficient to support a plea that he is estopped to insist on a private crossing.

Special interrogatories. Although the question of whether a grade crossing would have been sufficient was a proper subject of special inquiry, yet defendant having failed to request the same was in no position to complain of 'the court's neglect to submit the interrogatory.

*Appeal from Boone District Court.*— HON. J. H. RICHARD, Judge.

SATURDAY, DECEMBER, 16, 1905.*

ACTION to compel the construction of an overhead crossing at a point designated by the owner of land on each side of defendant's railroad. Judgment as prayed, from which defendant appeals.— *Affirmed.*

*Dyer & Hull*, for appellant.

*Harpel & Cederquist*, for appellee.

LADD, J.— I. This is an action in mandamus to compel the defendant to construct a private crossing over its track. The plaintiff owns the north seventeen and one-half acres of the S. E. ¼ S. W. ¼, the N. E. ¼ S. W. ¼, and the S. E. ¼ N. W. ¼ of section 18. The defendant's railroad enters the southeast corner and passes through the seventeen and one-half-acre tract in a northwesterly direction, crossing the north line a little west of its center, and then through the southwest portion of the lower forty. There was a public highway along the east side of the land on the south, and in January, 1904, the company completed a bridge in the highway over the railroad at a cost of $900. In June follow-

* See note bottom page 485.

ing this highway was vacated from the north down to a point below the bridge, and another road opened along the south line of plaintiff's land to the right of way and then diagonally along it in a southeasterly direction to the highway running south. This left about half the bridge south of the south line of plaintiff's farm, and its center somewhat east of the division line beween his land and that of his neighbor, Crouse, to the east. Though the consent of the owners, including plaintiff, attached to the petition to vacate, is dated August 31, 1903, it does not appear when the petition was filed, and the president of the company testified that the change was not contemplated when the bridge was built, and for all that appears it was erected in compliance with section 2054 of the Code, exacting good, sufficient, and safe crossings at all points where a railway crosses any public road. Certainly it was not a private crossing, and cannot be so construed, even subsequent to the vacation of the highway, for it does not connect the two parts into which the railroad had divided plaintiff's farm.

Section 2022 of the Code provides that " when any person owns land on both sides of any railway the corporation owning the same shall, when requested to do so, make and
1. RAILROADS: keep in good repair one cattle guard and one
private cross- causeway, or other adequate means of crossing
ings: manda-
mus. the same, at such reasonable place as may be
designated by the owner." This clearly contemplates such a crossing as shall connect the several parts of the owner's land without requiring him to go into the public highway. Otherwise public crossings would suffice, and ordinarily enable the owner, by going " around the road," to reach the portion of land across the track from his buildings. This bridge, after the vacation, merely afforded plaintiff access to the highway, and only by that means, rather than by an adequate crossing, could he reach his land south of the railroad, and, unless the plaintiff assented to this bridge in lieu of the private crossing such as he was entitled to

under the statute, he had the right to a crossing which would afford adequate means of passing from one portion of his farm to the other, and the court did not err in so instructing the jury.

II. In the fourth instruction the court submitted the issue as to whether the plaintiff assented to the construction of the bridge in the highway " as and for his crossing."

2. SAME: instructions. This last expression was explained in the eighth instruction as meaning " the crossing to which plaintiff is entitled by law," and the jury were elsewhere informed that the statute gave him the right to a private crossing. As so explained, we think the jury could not have failed to understand that the issue to be determined was whether the public crossing, constructed as the parties had agreed, was, under an arrangement between them to be erected in lieu of a private crossing, to which plaintiff was entitled.

Among other criticisms, it is said the instruction was erroneous in that it cast the burden of proof on the defendant. As contended, the plaintiff had admitted his con-

3. WAIVER: burden of proof. sent to building of the bridge, but not in lieu of a private crossing. This latter feature of the defense was in the nature of a waiver, and uniformly the party who pleads the waiver of a right has the burden of proof.

Again, it is said that the jury was not told what would be sufficient assent. True, but jurors are presumed to know the ordinary meaning of words, and, under the instruc-

4. ASSENT TO CROSSING: instruction. tion, any assent, of the kind defined, was sufficient. Equally without merit is the suggestion that the jury might have inferred that a failure to find that there was such assent ended the defense. Of course, it would have ended this particular one, but no other.

Appellant also urges that the evidence conclusively established such assent, and therefore its motion to take the

case from the jury should have been sustained.    On the contrary, we think it is doubtful whether there was any evidence upon which a finding of assent might have been predicated.    The president of the company testified that at the time the deed of the right of way was executed plaintiff agreed to the location and character of the crossing in the highway, but he does not claim, save inferentially, that plaintiff waived the right to a private crossing to which the statute entitled him.    On the other hand, plaintiff and his wife are positive that, though assent was given to the highway crossing as constructed, it was not in lieu of a private crossing, and that it was then talked that a crossing should be provided connecting the two portions of the farm, to be located at a point where he and the company's engineer should determine. Viewing the evidence in the light most favorable to defendant, it no more than raised an issue for the jury.

5. ASSENT TO CROSSING: evidence.

III.    The cut in plaintiff's land from the corner is from twenty-five to thirty feet deep for a distance of 780 feet, from which point there is a fill thirty-eight feet deep for 200 feet between the banks of a ravine, and from there on a cut of twenty-five or twenty-six feet. For a valuable consideration, paid when the deed to the right of way was executed, plaintiff waived all right to a crossing west of this ravine.    It is apparent that a grade crossing would be impractical at any place east of the ravine, save where the fill begins, and its feasibility even there is exceedingly doubtful.    The ravine is sixty-five feet below the surrounding surface, and its banks steep — according to plaintiff on an angle of forty-five degrees — and rough and covered with timber.    Crouse testified that the banks were so steep that it would be all a man could do to crawl up, and that in some places a ladder would be necessary.    A deep ravine runs from the east, parallel with the railroad and one or two rods south of it, into that mentioned.    Besides, the high embankments would obstruct the

6. GRADE CROSSING: evidence.

view of an approaching train until those attempting to go over would reach the crossing. The evidence also indicates that the character of the soil is such as to easily be washed out.

On the other hand, defendant's engineer testified that a grade crossing could be made " around the side· of the hill " at a descent of not more than 30 degrees. " Q. And grade out in this man's farm? A. No; we have the right of way, there. Q. And then you would make a steep road down to the track, and on the other side you would make a steep climb from the track — is that the idea? A. Make a ˙reasonable grade. Q. What do you call a reasonable grade? A. Ten or fifteen feet in 100. Q. Now, you would have to make the highway 200 or 300 feet away from the railroad on each side in your cut for the private road — isn't that true? A. It isn't necessary to have a private road there at all. You would not want to go up there with a wagon at all. Q. That is what you mean, not a suitable road for wagons, but for cows to climb — is that what you mean? Do you mean to exclude the use of team and wagon on the road? A. No, sir. Q. Then why do you say you wouldn't have to use wagon and team? A. Because you have another way of getting around there with a wagon." Beyond this, the evidence of the character of the approach to such a crossing was not meet, and in view of the undisputed evidence of the character of the embankment, and the equivocal answers of the engineer, it was open to the jury to say whether a grade crossing at this point would be practicable and afford an adequate means of passing from one portion of the farm to the other.

IV. It is urged, however, that, as the cost of an overhead crossing will greatly exceed the benefits to be derived by the landowner, the defendant should not be required to furnish it. Undoubtedly this should be taken into account in deciding upon the character and location of the crossing, but it is not a de-

7. EXPENSE OF OVERHEAD CROSSING: defense.

fense. The right of way is acquired upon the condition that an adequate crossing will be furnished the owner. *State v. Mason City & Ft. Dodge Ry.*, 85 Iowa, 516, and this, without reference to the cost involved. Such cost may be kept in view in determining the grade of the road and through what land it shall be located, but will not defeat the owner's right to an adequate crossing after his farm has been severed by the appropriation of the right of way, especially as the right to such crossing is conceded in estimating the compensation to which he is entitled. *Guinn v. Railway,* 125 Iowa, 301. If, then, the grade crossing was impracticable as an adequate means of crossing from one portion of the farm to the other, as the jury found, it must be rejected and the overhead crossing, conceded to be adequate, adopted in its stead, even though this may be at considerable expense to the railroad company.

V. In ruling on the motion to direct a verdict, the court remarked that defendant was in no position to avail itself of an agreement for a grade crossing, if made, and in any event this point was in dispute. This was correct in law as well as in fact, because no such issue was raised by the answer, and, though a grade crossing appears to have been discussed, no one testified that it was agreed upon.

VI. After argument to the jury had been concluded defendant filed an amendment alleging that the parties had agreed upon a grade crossing at a place to be determined by its engineer and plaintiff. It was stricken on motion. In this there was no abuse of discretion. Issues should not be injected after opportunity of debate has been closed, save upon a very clear showing that justice will be promoted thereby.

8. PLEADINGS: amendment.

VII. Defendant, in three paragraphs of its answer, alleged that plaintiff, by reason of his acquiescence in and consent to the construction of the bridge, is estopped from insisting on another crossing. These were stricken on motion. The ruling was correct. The company was required by law to make a good, safe, and

9. ESTOPPEL.

sufficient crossing where the bridge was placed, and in that every citizen was bound to acquiesce, and could not be heard to object. This being true, the mere allegation of such consent or acquiescence was insufficient as a foundation for the plea of estoppel.

VIII. What we have said indicates that the instructions asked were rightly refused. The fault found with the fifth instruction is hypercritical, and does not demand discussion. All of the interrogatories call for ultimate facts inhering in the verdict, and are within the rules approved in *Morbey v. Railway,* 116 Iowa, 84.

10. SPECIAL IN-
TERROGATORIES.

The court might well have inquired whether a grade crossing where the fill begins would furnish adequate means of crossing the track, but the defendant, as it failed to submit such an interrogatory, is not in a situation to complain.

The record is without error, and the judgment is *affirmed.*