C. Q. HARTSHORN, Appellant v. CHICAGO GREAT WESTERN RAILWAY COMPANY.

**Railroads:** PRIVATE CROSSING: AGREEMENT TO MAINTAIN. A railway company, having agreed to provide an open crossing for the accommodation of a land owner, cannot arbitrarily inclose the same with gates without offering to construct another like crossing; unless it is a menace to the public safety and the operation of the road, and there is no other suitable place at which it can be maintained at a reasonable expense and to the accommodation of the land owner.

*Appeal from Wright District Court.*— HON. J. H. RICHARD, Judge.

TUESDAY, NOVEMBER 19, 1907.

REHEARING DENIED MONDAY, FEBRUARY 17, 1908.

ACTION to enjoin the defendant from closing a private railway crossing. The petition was dismissed, and plaintiff appeals.— *Reversed.*

*Peterson & Knapp,* for appellant.

*Healy & Healy* and *Birdsall & Birdsall,* for appellee.

LADD, J.— Plaintiff is the owner of the south half and the northwest quarter of section 35, township 92 north of range 24 west of fifth P. M. His improvements are along the highway on the south line of the section. In 1901 the defendant condemned a right of way along the north line of the south half section separating therefrom the northwest quarter, to which plaintiff now has no access, save across the defendant's track. Pending the trial in the condemnation proceedings, the defendant expressly agreed to give the plaintiff " an open crossing at such reasonable place he may suggest, with cattle guards." The law required it to furnish an adequate crossing at such reasonable place as the owner might select, so that the only significance of the stipulation is that the crossing should be open. The character of the use is not defined, nor was this necessary, as the expression " open crossing," when applied to railroads, has a well-understood meaning, and the use to be made of it necessarily depends somewhat upon the character of the land on each side of the track and the purposes to which the owner puts it. The only natural inference is that such use is to be made of the crossing as the exigencies of carrying on the ordinary pursuits of agriculture render necessary. Here the right of way intersected a pasture of some two hundred and twenty acres, and the parties to the agreement must have contemplated an open crossing suitable for the passage of a large amount of stock between the separated portions of the farm. If there were any doubt on this score, the circumstances under which the agreement was entered into, as alleged in the petition and proven, without serious conflict in the evidence, demonstrate that such was the design. Having enjoyed the advantage of the stipulation, by way of reduction of damages, the defendant should be held to performance, unless conditions are such as will relieve it from its obligation. The parties agreed upon the location of the crossing, and defendant made the necessary improvements therefor.

It was maintained for about a year, when the company fenced it on both sides and put in gates.

In justification for so doing, it contends (1) that an open crossing at such place is a menace and dangerous to the transportation of property and passengers over its line of road; and (2) that an unreasonable expense would be essential to obviate this peril, and enable it to continue the open crossing. It is no answer to say that the company should have realized all this when making the promise, for the public is too deeply concerned in the safe operation of the railway and the protection of life and property to tolerate the continuance unnecessarily of a known peril to either. Nor should improper agreements in the interest of private convenience or to avoid outlay of money be allowed to unduly interfere with the public necessities of rapid transportation. Experience often demonstrates error in plans for the future, no matter how carefully considered, and when these are discovered the door for adequate correction, when the public is so vitally concerned, ought not to be closed. As pointed out in *Scrimper v. Railway,* 115 Iowa, 35, the railway company cannot be permitted arbitrarily to change a crossing, but when, owing to the situation and use of that established, it is found, on the one hand, to be inadequate, or, on the other, unduly to interfere with the safe operation of the railroad, these objections may be obviated by such change or changes as are essential to accomplish that object. *State v. Railway,* 99 Iowa, 565; *Scrimper v. Railway, supra.* If, then, the place selected by the parties for this open crossing has proven with respect to the use made of it to be unsafe, another more satisfactory for the purposes contemplated should be selected in its stead. That now existing is where the cut extending east three thousand one hundred feet and the fill running west one thousand nine hundred feet meet, so that the crossing is at grade, and the topography of the farm is such as to render it doubtful whether a more suit-able location could be selected for a surface crossing. The

road is straight, so that there is an unobstructed view for miles each way, but, owing to the cut, engineers coming from the east experience difficulty in detecting objects on the crossing until within from one hundred to three hundred feet.   The evidence also indicated that the cattle often gather on the track, so that trains are compelled to slow up or stop until they scatter.   Moreover, the evidence tended to show that an engine is likely to be derailed if it comes in collision with cattle, especially when lying on the track where they may go when having free access to the right of way.   Some of plaintiff's cattle were killed, though after the gates had been put in and left open.   While the consequences thus far had not been serious, the situation appears to be such that, in the interest of rapid transportation and the safe operation of trains, an open crossing at that place ought to be obviated, especially in view of the uses originally contemplated by both parties.

Counsel for appellee charge the plaintiff with responsibility for the mistake, and argue that the company is still willing to maintain an open crossing at a reasonable place. The record discloses, however, that the location was fixed upon by mutual consent, and that the defendant, without offering to establish another, at the end of the year and without plaintiff's consent, closed it with a fence and put in gates. The fault, therefore, was that of the defendant for Hartshorn was content with the crossing given him.   If the company became dissatisfied, it was its duty to take the initiative in the selection of another location.   For three years it has done nothing of the kind, and the fair inference is that it had no such purpose, but is undertaking to effect a change in the character of the crossing in spite of its agreement and against plaintiff's protest.   Authorities holding that contracts of common carriers inconsistent with their public duty cannot be enforced have no application, for the evidence indicates that it is practicable to establish an open overhead crossing at some distance east of this or an under crossing a short

distance west, and, in the absence of any evidence on the subject, it is not to be presumed that the expense in so doing would be excessive. See *Herrstrom v. Railway,* 129 Iowa, 507. *Truesdale v. Jenson,* 91 Iowa, 314, is not in point, for here the parties have determined for themselves that the crossing shall be open, and the controversy is whether the defendant shall bide its contract. We have a case, then, where the existing crossing, owing to the purpose for which it is used, is not at a reasonable location, where the improvements of the landowner are not such that his rights will be interfered with by a change, and where there are other locations at either of which a crossing such as has been contracted may be safely maintained. The remedy in such a case is simple. Let the company demand that the landowner select another location, which under the law must be reasonable or possibly the parties may agree thereon. If there are differences as to where the crossing shall be placed, the railroad commissioners may be able to adjust them. *State v. Railway,* 85 Iowa, 516. But, until the defendant has established another crossing such as it has promised to maintain, it is in no position, save in an emergency which does not exist, to close that already established. Its continuance is not fraught with great danger. The evidence shows that, with the proper exercise of care, the safety of travelers and property need not be jeopardized. During the time it was open no cattle were run down, and possibly but for the existence of the fence and a defective cattle guard none subsequently would have escaped into the right of way. Our conclusion is that defendant should have been enjoined from closing the crossing, but with leave to apply for a dissolution of the writ or a modification of the decree upon the establishment of another open crossing at such reasonable place as shall be selected, or the cause after granting such relief might have been continued for that purpose.

The decree is reversed, and the cause remanded for an entry in harmony with this opinion.— *Reversed.*