## J. F. LIVINGSTON v. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

**Railroads:** OPEN CROSSING: USE OF SAME: INTENTION OF PARTIES. An open grade crossing for private use provided with cattle guards and fences, and constructed by agreement of the parties to take the place of an underground cattle pass, is held to have been intended by the parties for the passage of cattle from one side of the track to the other at will and unattended.

**Same:** CONTRACT FOR CONSTRUCTION: VALIDITY: PUBLIC POLICY: ENFORCEMENT OF LEGAL PROVISIONS. The agreement to construct and maintain an open railroad crossing for the passage of stock unattended is not in violation of any statute, and if void because so constructed it must be on the ground that it is against public policy, a question discussed, but not decided. But if such provision were held void it would not affect another and separate provision of the contract requiring the company to pay for all stock injured or killed while thereon; as the legal conditions of a contract, which are separable from those which are illegal, may still be enforced.

**Same:** KILLING OF STOCK: WHO MAY RECOVER. A contract to pay the owner, his heirs or assigns, for all stock killed upon an open crossing constructed for his convenience, when supported by a consideration, may be enforced by a son and heir, whether it be construed as a covenant running with the land or not.

**Same:** PLEADING: CONTRIBUTORY NEGLIGENCE. Where there is a contract obligation to pay for stock killed on a private crossing the plaintiff need not allege freedom from contributory negligence in his action to recover therefor.

*Appeal from Jones District Court.*—HON. B. H. MILLER, Judge.

FRIDAY, MAY 7, 1909.

SUIT to recover for cattle killed at a private crossing.

There was a directed verdict for the plaintiff, and from a judgment thereon the defendant appeals.—*Affirmed.*

*James C. Davis* and *A. A. McLaughlin,* for appellant.

*Park Chamberlain* and *Jamison & Smyth,* for appellee.

SHERWIN, J.—Plaintiff is the owner of a tract of land crossed by the defendant's railroad. He acquired title thereto as one of the heirs of his father, John F. Livingston, and by purchase from other heirs. In 1874 the father, John F. Livingston, made a contract in writing with the defendant, which recited that in 1870 the said Livingston and the Iowa Midland Railway Company had entered into a written agreement, whereby said company agreed to construct two farm crossings and one underground cattle pass on the land in question; that the cattle pass had not been constructed as agreed, in consequence of which litigation had resulted between the parties, and, as a settlement of the controversy, said contract was then made. It is then provided that "a good, safe and sufficient crossing" shall be constructed, "together with safe, sufficient approaches thereto for the passage of stock and teams attached to wagons or other vehicles whether loaded or empty." The contract also required the railway company to fence on both sides of its track, and to construct cattleguards at each side of said crossing. The fourth clause of the contract is in the following language: "That said railway companies are not to require said crossings to be closed by gates, or bars, but the same is to be left open for use, and said companies hereby agree to pay said Livingston for all stock killed or injured (owned by said Livingston, his heirs or assigns) on said crossings by cars or engines of said companies or either of them." The plaintiff relied on said clause, and did not plead negligence

on the part of the appellant, or freedom from contributory negligence on his part. The facts were that the plaintiff's farm was fenced on both sides of this crossing, there being a field of about seventy-five acres south thereof, and one of about fifteen acres north of it. There were corn stalks in both fields, and the plaintiff, some two weeks before, had turned about thirty-five head of cattle therein, permitting them to remain unattended therein night and day, and to pass from one field to the other. The cattle were struck on this crossing after dark. The defendant alleged that such use of the crossing was not contemplated by the contract; that the contract did not contemplate liability for stock killed while making such use of it; that if the contract did contemplate such use, then the same was void as being in contravention of public policy, "in that to permit live stock to roam, loiter, stand, or sleep at will on a railway crossing at night was so dangerous to the traveling public, employees engaged in operating trains, and property being transported thereon that the railway company, in the performance of its public function, would not be permitted to contract for such use of the crossing." The further defense was made that the contract, so far as it agreed to pay for injury to stock, "was a personal one with plaintiff's father, did not run with the land, and plaintiff was not entitled to the benefits thereof." Contributory negligence on the part of the plaintiff was also pleaded.

It will be observed that the contract on which this suit is based was entered into to settle a controversy that had arisen because of the failure of the defendant to com-

1. RAILROADS: open crossing: use of same: intention of parties. ply with one of the terms of the contract made in 1870. That contract provided for two farm crossings, and one underground cattle pass. The cattle pass had not been provided, and the contract in suit was, by its terms, to take the place of the former in that particular. A cattle pass under

a railroad track is ordinarily intended for the free use of
stock, and, as the defendant's road divided the farm in ques-
tion, it was undoubtedly the intention of the parties, when
the first contract was entered into, that Mr. Livingston's
cattle should have free access to the fields on both sides of
the right of way.  The provision in the contract in suit did
away with the underground cattle pass, and in place there-
of, there was to be an open crossing, provided with cattle
guards, etc.   We think there can be no serious question
as to the intent of the parties.   If the cattle pass was
intended to furnish free access to the fields on both sides
of the track, it is clear that the crossing in question was
intended for the same purpose.   The contract expressly
stipulated that no gates or bars should be required at this
crossing; and, if · the parties did not intend that cattle
should pass over the same at will, they must have contem-
plated either that the land on both sides of the right of
way would not be used for feeding cattle, or that, if so
used, the cattle would always be attended by some one.
The contract will bear no such construction.  *Hartshorn v.
C. G. W. Ry. Co.*, 137 Iowa, 324.  The cases relied upon
by the appellant to support its contention on this branch
of the case go no farther than to hold that an open cross-
ing is not necessarily provided for by the statute.   It is
true some of them question the public policy of such a
crossing as we are now considering, but in none of them
was the question determined.  See *Curtis v. Ry. Co.*, 62
Iowa, 418; *Truesdale v. Jensen*, 91 Iowa, 312; *State v.
Ry. Co.*, 99 Iowa, 565.

The appellant urges that, if the contract sued on is
construed to contemplate or authorize the use
of the crossing as a part of an inclosure in
which live stock may be confined and have
access to the crossing at all times unattended,
it is in contravention of public policy
and void.  It is a universal rule that railroads, and other

2. SAME:
contract for
construction:
validity:
public policy:
enforcement
of legal
provisions.

corporations which are created with special powers and privileges, owe certain duties to the public which may not be disregarded, and that any contract by the terms of which the public interests are seriously infringed is void as against public policy. *Williamson v. Ry. Co.,* 53 Iowa, 126. . It is an equally well-established rule, however, that private contracts should not be declared void because of contravention of public policy, unless the question is free from doubt. In *Kellogg v. Larkin,* 3 Pin. (Wis.) 123 (56 Am. Dec. 164) it is said: "Before a court should determine a transaction, which has been entered into in good faith, stipulating for nothing that is *malum in se,* to be void as contravening the policy of the state, it should be satisfied that the advantage to accrue to the public for so holding is certain and substantial, not theoretical or problematical. He is the safest magistrate who is more watchful over the rights of the individual than over the convenience of the public, as that is the best government which guards more vigilantly the freedom of the subject than the rights of the state." The test to be applied to a contract of this kind is whether it is, in its nature, such as may be injurious to the public. The question of its actual result is not involved in the inquiry. 15 Am. & Eng. Enc. of Law, 934, (2d Ed.); 9 Cyc. 481. As we have already shown, the contract sued on contemplates that the plaintiff's live stock may roam at will over this crossing, during the night as well as the day; and it is not going beyond its fair intendment to say that it also contemplates their loitering or resting thereon, for it must be presumed that the parties contemplated the ordinary use of a farm lying on both sides of a railroad right of way, and its use for stock purposes would necessarily mean such use of the crossing by stock placed in the fields adjacent thereto. If it should be held as a matter of law that such use of the crossing may be injurious to the public by reason of the danger incident thereto, the contract, in so far as it

provides for an open crossing at that point, should be held void. The general policy of this state has been to require railroad corporations to use every reasonable precaution for the safety of the traveling public, and for the safety of its employees, and such must be held to be the public policy of the state as declared by its various statutory enactments.

This principle has been frequently recognized by this court in discussing the statute providing for an adequate crossing. Thus in *Curtis v. C., M. & St. P. Ry. Co.,* 62 Iowa, 418, the question was discussed whether the landowner was entitled to an open crossing in order to have an adequate one, and it was said: "There would certainly be a grave objection to a crossing in a position that would allow cattle to enter upon the track and stop there. It would unquestionably be a source of danger." In *Truesdale v. Jensen,* 91 Iowa, 312, in speaking of a statutory crossing, it was said: "The location and character of such crossing must be determined with due regard for all the interests involved in its construction and maintenance. Among these are the reasonable use which the landowner desires to make of it, . . . and the effect it will have upon the operation of the railway, and the safety of life and property. . . . We are satisfied that an open crossing at grade would interfere, to an unnecessary extent, with the proper operation of trains on the railway, and would be a source of much danger to persons and property transported over it." In *State v. B., C. R. & N. Ry. Co.,* 99 Iowa, 565, it was said: "Ordinarily a farm crossing without gates would be condemned." In *Hartshorn v. C., G. W. Ry. Co.,* 137 Iowa, 324, there was an agreement between the landowner and the railroad company whereby the latter agreed to construct and maintain an open farm crossing. The company thereafter made a close crossing of it by fencing and putting in gates. It attempted to justify its action in so doing by pleading and

showing that the open crossing was dangerous and a menace to the transportation of persons and property over its line of road. In discussing this question we said: "It is no answer to say that the company should have realized all this when making the promise, for the public is too deeply concerned in the safe operation of the railway, and the protection of life and property, to tolerate the continuance unnecessarily of a known peril to either. Nor should improper agreements in the interest of private convenience, or to avoid outlay of money, be allowed to unduly interfere with the public necessities of rapid transportation." And it was further said: "If, then, the place selected by the parties for this open crossing has proven, with respect to the use made of it, to be unsafe, another more satisfactory for the purposes contemplated should be selected in its stead." In *State v. M. C. & F. D. Ry. Co.,* 85 Iowa, 516, the danger to the public in crossings for stock is also recognized. While none of the cases cited above decide the precise question under consideration here, they all clearly recognize the danger to the public in permitting open crossings for the passage of unattended stock, and in each case the court refused to sanction such crossings. And in this connection it should be said that this court has never approved an open farm crossing for the passage of stock alone. In the two or three cases where open crossings have been found necessary, under the statute providing for an adequate crossing, such crossings were sustained on the ground that the landowner had no other means of reaching a public highway. See *Gray v. Ry. Co.,* 37 Iowa, 119.

We do not now definitely determine, however, whether that part of the contract which provides for an open crossing at the particular point in question is void on the ground of public policy; for, if it were to be so held, the defendant could not escape liability in this case. Livingston surrendered valuable rights as a consideration for the agree-

ment on the part of the railway company. Such consideration was legal and sufficient, and based thereon, the railway company undertook to construct a good, safe and sufficient crossing, with safe and sufficient approaches thereto for the passage of stock and teams attached to wagons or other vehicles, loaded or empty; and it further agreed not to require the crossing to be closed by gates, but to leave it open for use, and to pay for all stock killed or injured on the crossing. The promise to construct the crossing, and the promise to pay for stock killed or injured thereon, are in no manner contrary to law or public policy; and, if it be conceded that the promise to maintain an open crossing is in contravention of public policy, we still have a contract, a part of which is unobjectionable and supported by a valuable consideration, and a part of which is illegal. It is a well established principle of law that, where a contract contains conditions, some of which are legal, and others which are not, and they are separable, the legal conditions will be enforced and the illegal ones disregarded. *U. S. v. Hodson,* 77 U. S. 395 (19 L. Ed. 937). Where an agreement contains two or more distinct stipulations or promises, one of which is against public policy, and the others are not, the illegality of the one will not relieve the promisor from liability on his valid promises. *Osgood v. Bauder,* 75 Iowa, 550; *Express Co. v. Erie Railroad Co.,* 35 N. J. Law, 240; *Morris v. Way,* 16 Ohio, 469; *King v. King,* 63 Ohio St. 363 (59 N. E. 111, 52 L. R. A. 157, 81 Am. St. Rep. 635); *Coal Co. v. Jutte,* 210 Pa. St. 288 (59 Atl. 1088, 105 Am. St. Rep. 812); *Pierce v. Pierce,* 17 Ind. App. 107 (46 N. E. 480.) "When the good part of the contract can be separated from that which is bad, the courts will make the distinction." 2 Kent's Commentaries, 467; *Stewart v. Pierce,* 116 Iowa, 733. And where a party has contracted to perform both legal and illegal acts, he will be required to perform the legal acts, if they can be separated from the illegal ones. *Hynds*

*v. Hays,* 25 Ind. 31. In *Widoe v. Webb,* 20 Ohio St. 431 (5 Am. Rep. 664) it is said: "The concurrent doctrine of text-books on the law of contracts is that, if one of two considerations of a promise be void merely, the other will support the promise, but that if one of two considerations be unlawful, the promise is void. When, however, for a legal consideration, a party undertakes to do one or more acts, and some of them are unlawful, the contract is good for so much as is lawful, and void for the residue." The above language is quoted and applied in *McCullough v. Virginia,* 172 U. S. 102 (19 Sup. Ct. 134, 43 L. Ed. 382). "A contract part of which may be repugnant to law and against public policy, and part not being so, may be divided, and so much as may be unexceptionable may be enforced." *Stewart v. Pierce, supra; Fackler v. Ford,* 24 How. 322 (16 L. Ed. 690); *Railroad v. Mathews,* 64 Ark. 398 (42 S. W. 902, 39 L. R. A. 467); *Oregon v. Winsor,* 87 U. S. 64 (22 L. Ed. 315). The promise to provide an open crossing does not violate any statute of the state, and hence it is not in that sense illegal. If void at all, it is because it is against public policy, and not because it is prohibited by statutory enactment. And where such is the condition, and one of the parties has in good faith paid legal and full consideration, and the other has received the full advantage of it, the court should not hesitate to separate the good from the bad, and enforce the performance of the valid part of the contract.

The appellant further contends that the contract, agreeing to pay "said Livingston for all stock killed or injured (owned by said Livingston, his heirs or assigns)

**3. SAME: killing of stock: who may recover.**

on said crossings by cars or engines of said companies or either of them," was a personal contract with Livingston, and not a covenant running with the land, and that the plaintiff is not entitled to the benefits thereof. To create

a covenant running with the land it is generally essential
that a conveyance of land, or some interest therein, be
made. "Where one party covenants with another in re-
spect to land, and at the same time, and as a part of mak-
ing the covenant, neither parts with nor receives any title
or interest in the land, nor creates an easement, or a right
in the nature of an easement, for the benefit of the land,
such a covenant is at best but a mere personal contract."
8 Am. & Eng. Enc. of Law, 147. The agreement to main-
tain an open crossing at this place would undoubtedly af-
fect the mode of enjoyment of the land, but an agreement
to pay Livingston, his heirs, or assigns for stock killed or
injured on the crossing does not affect the mode of en-
joyment or the value of the land. Generally a covenant
by a stranger to the title can not run with the land,
though it respects the land, and is intended to benefit it.
8 Am. & Eng. Enc. Law, 136, 140, 147. These con-
siderations are not conclusive of the plaintiff's right to
maintain this action, however, for the contract in question
was clearly made for his benefit, and he may recover there-
on, although it be not held a covenant running with the
land. (The railway company, for a valuable consideration
passing to it from John F. Livingston, the father of the
plaintiff, agreed to pay said Livingston for all stock killed
or injured, owned by him, his heirs, or assigns. We have,
then, a valid contract, made for the benefit of the heirs
or assigns of John F. Livingston; and, while such heirs
or assigns are not specifically named, the contract is
binding on the defendant, and may be enforced by
the plaintiff as one of such heirs. Where the bargain
between the parties is that one of them shall confer
a benefit on a third person, and the consideration for the
promise is adequate, recovery may be had thereon by such
third person. Bishop on Contracts, sections 1214-1227, in-
clusive; 1 Beach on Contracts, section 195, and cases cited;
*Bank v. Rowley*, 92 Iowa, 530; *Poole, Gillman & Co. v.*

*Hintrager,* 60 Iowa, 180. There is no doubt as to the consideration in this case; and the railway company having agreed to pay for the stock killed or injured owned by the heirs of John F. Livingston, we know of no sound rule of law which will now relieve it from liability to this plaintiff. The law determines who are heirs; and, to enforce a contract made for the benefit of a third person, it is not necessary that such third person be specifically named. *Hall v. Plaine,* 14 Ohio St. 417; *Coster v. Mayor,* 43 N. Y. 399.

No allegation of want of negligence on the part of the plaintiff was necessary, because the railway company

4. SAME: pleading: contributory negligence.

agreed to pay regardless thereof. Nor would the fact that the plaintiff turned his cattle into the inclosure unattended constitute negligence, for that was what the contract contemplated.

We think the defendant's liability under the contract was shown without question, and that a verdict for the plaintiff was properly directed.—*Affirmed.*